BAUM, Respondent, vs. LIGHTING PRODUCTS COMPANY and another, Appellants.

*November 16, 1923—February 12, 1924.*

*Fraud: Representations by corporate officers: Basis of action in tort: Rescission of contract to purchase corporate stock: Reliance by plaintiff: Question by court.*

Representations by the officers of a corporation to plaintiff while he was negotiating for the purchase of stock in the corporation could not support a recovery of damages in an action in tort against the corporation and such officers, or constitute a basis for rescinding the contract, where the testimony shows as a matter of law that plaintiff had sufficient knowledge of the facts to put him on full inquiry and that he did not in fact rely on such representations, but acted and relied upon his own investigation and judgment, being assisted from time to time by his brother, an attorney, his father, an experienced business man, and by an accountant employed by him.   p. 571.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

This action was brought by the plaintiff respondent against the *Lighting Products Company,* a Wisconsin corporation, Nathan Berger its president, W. Zack its secretary, and C. F. Ullman its vice-president, and before trial the defendant *Julius J. Goetz* was appointed receiver of said company by the circuit court for Milwaukee county and on plaintiff's application was made a party.

The company was organized in August, 1921, and engaged in the manufacture of lighting fixtures with an authorized capital stock of $15,000 common and $10,000 preferred stock, $12,800 of the common and $4,100 of the preferred having been issued.

February 3 or 4, 1922, by previous arrangement, the plaintiff met Berger, the president of the company, at the company's office and had a conference with him regarding the need of the company for further capital and the services of some one else in the office and the desire of the plaintiff to become interested in some business enterprise.

At such conference the plaintiff was furnished a statement of the company's business affairs · prepared by the defendant's secretary, Zack. This showed that up to January 1, 1922, the company had apparently made a profit of $3,336.40. Plaintiff then stated that he desired an accountant to examine the books as a condition to his investing, and suggested one Wille as competent for that purpose. After an interview with plaintiff, his brother, a practicing attorney in Milwaukee, Berger, and Wille, the latter being informed of plaintiff's desire to invest, arrangements were made with Wille.

On February 6th Wille with his employees commenced an examination of the books and was continuously so employed until after March 4th. In the meantime plaintiff often visited the company's place of business and was in communication with its officers and Wille.

Some time prior to March 4th plaintiff learned that the showing of an alleged profit appearing in the statement of January 1st, *supra,* was incorrect and that a proper accounting showed a loss of a corresponding amount. He also learned as to the incorrectness of the book entries as to two trade acceptances of $2,500 and $1,200 respectively.

Under the supervision of plaintiff's brother, the attorney at law above mentioned, meetings were had of the corporation relating to providing means· by which stock could be issued to the plaintiff for his proposed investment of $5,000,

On Friday, March 3d, a further conference was had and suggestions made as to the need of some immediate action by plaintiff, the details of the conversation and transaction at that time being somewhat in dispute. But it appears that the plaintiff was then informed by the accountant, Wille, that the audit of the books was not yet entirely completed and that there had been no check-over of the bank account.

March 4th a formal contract, drawn by plaintiff's brother, between plaintiff and Berger, the latter being the principal stockholder of the company, with provisions relating to their future positions and salaries in the company, the man-

ner in which each should support the other so far as the control of the corporation should be concerned, and also that plaintiff was to purchase $6,500 worth of the common and Class B preferred stock of the defendant company, was signed.

The same morning, March 4th, plaintiff arranged to withdraw a fund amounting to $5,060 which he had, and taking the company's bank deposit book with him he deposited such sum to defendant's credit, just before the closing hour of noon, in the Merchants & Manufacturers Bank in Milwaukee, where said company did business.

The parties met again Saturday afternoon at the company's office. Monday, March 6th, plaintiff commenced this action against the company and the other officers above mentioned and at the same time instituted a garnishment proceeding against the bank aforesaid. Subsequently bond was given in the garnishment proceeding to release the funds and nothing further appears to have been done therein.

On the same Monday morning a formal demand was made upon the company for the return to the plaintiff of the $5,000 so deposited by him on Saturday.

The complaint alleged that a number of false representations as to the books and affairs of the company had been made by the individual defendants and that such were relied upon by plaintiff as an inducement to make the investment of the $5,000, and he prayed judgment against the four defendants for its recovery.

At the close of the trial the respective defendants moved for a verdict in their favor. On the ground evidently that there was no evidence warranting judgment against the defendants Zack and Ullman, such relief was granted them. As to the defendant Berger, with whom alone, on behalf of the company, all the material transactions with plaintiff had been negotiated, it was at first denied. The plaintiff moved for a directed verdict in his favor against both Berger and the company.

Subsequently the plaintiff suggested that the motion should be granted as to the defendant Berger and thereupon the action was dismissed as to him also. The cause was then submitted to the jury upon a general verdict. There was no dispute as to the amount of damages in case the jury found in plaintiff's favor. The court instructed the jury as to the several elements necessary for them to find existed in order that a verdict based upon a finding of actionable fraud could be rendered.

A general verdict in plaintiff's favor was returned and judgment in accordance therewith entered, from which defendants have appealed.

For the appellants there were briefs by *Lines, Spooner & Quarles* and *Alexander & Burke,* and oral argument by *Leo Mann,* all of Milwaukee.

For the respondent there was a brief by *Stern & Hersch* and *Harold M. Baum,* all of Milwaukee, and oral argument by *Mr. Morris Stern* and *Mr. Baum.*

The following opinion was filed December 11, 1923:

ESCHWEILER, J. At the close of the trial and from plaintiff's own evidence, many of the specifications asserted in the complaint of alleged false representations could no longer be considered as a basis for recovery, the plaintiff having been informed as to the real facts before making his investment, and this is especially so as to the representation made that the company had been making a profit.

Plaintiff maintains, however, that there remained at least four several representations as to material facts and that such were false and relied upon, and that any of such, if the jury accepted the plaintiff's version of the transaction, would be sufficient to support the general verdict in his favor. Two of these relate to the trade acceptances of $2,500 and $1,200 respectively. The situation as to these two, however, was substantially known to plaintiff before he made his investment; he had ample opportunity to obtain

and means of obtaining further information concerning each of them if he had so desired, and from the record we are compelled to say that as matter of law neither one of such furnishes a substantial basis for the verdict.

Another circumstance relied upon was that one Ullman, the father of the vice-president of the company, claimed that there was due him the sum of about $600 for commission and that no account thereof appeared on the books. It appears, however, that as to this the plaintiff knew, before making his investment, that such a claim had been made for $50 or $75 although not on the books. But more controlling than that information which he had is the fact that there is no testimony that there was any such amount due Ullman. All that this item amounts to is that plaintiff was told in the afternoon of the day he invested his money that Ullman made a larger claim for commission than he had before asserted. This is certainly insufficient basis for the verdict.

Lastly is the contention that in the afternoon prior to or the morning of the day when plaintiff deposited his $5,000 to the company's credit, Berger, the company's vice-president, told plaintiff that there was then on deposit to the company's credit $1,800 to $2,000; it being then discussed that this amount together with the $5,000 plaintiff proposed to invest, with the anticipated proceeds from the business during the following month, would furnish sufficient capital to tide the company over its then recognized difficulties and place it on a going basis.

A consideration of the testimony in this case discloses that the plaintiff from the very start did not rely upon obtaining information from the president of the company, with whom alone he transacted the business, but acted and relied upon his own investigation and judgment, being assisted from time to time by his brother, an attorney at law, his father, an experienced business man, and by the reports made to him by the accountant of his own selection and the employees of such accountant from their independent ex-

amination of the company's books.   He had full and ample opportunity to ascertain as to the fact of any balance in the bank by mere inquiry there.   He knew at this time that there had not been a checking over between the books of the company and those of the bank.   From all the facts as to plaintiff's actions in this regard as they appear from his own testimony and that of his witnesses, we are forced to the conclusion that it must be said as a matter of law that there was no such reliance by plaintiff upon such statement by the company's president, if any such statement was made, as would be necessary to support recovery for damages in a tort action or as a basis for rescinding the contract.   This conclusion makes other questions presented immaterial.

It follows from what has been said that the verdict and the judgment thereupon must be set aside and the complaint dismissed.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on February 12, 1924.